UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

GAY-STRAIGHT ALLIANCE OF YULEE
HIGH SCHOOL, an unincorporated
association; HANNAH PAGE, through her
parent and next friend SUMMER PAGE; and
JACOB BROCK, through his parent and next
friend SHERYL L. WILLIAMS,

       Plaintiffs,

vs.                             CASE NO.:  3:09-cv-112-J-25TEM

SCHOOL BOARD OF NASSAU COUNTY,

       Defendant.

_____/

## DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFFS'MOTION FOR PRELIMINARY INJUNCTION AND ACCOMPANYING MEMORANDUM OF LAW

Defendant, SCHOOL BOARD OF NASSAU COUNTY ("SBNC"), opposes Plaintiffs' Motion for Preliminary Injunction because Plaintiffs cannot establish a likelihood of success on the merits or any of the other legal requirements for this extraordinary remedy and requests the Court deny Plaintiffs' Motion.  Defendant submits the accompanying memorandum of law in support of its opposition to Plaintiffs' Motion.

## INTRODUCTION

Plaintiffs, the Gay-Straight Alliance ("GSA"), an unincorporated, voluntary association, and Yulee High School students, Hannah Page and Jacob Brock, have sued the School Board of Nassau County based on an alleged denial of their application to start the student-initiated, sex-based student club on campus during noninstructional time.  However,

the School Board of Nassau County only denied the application because the club refused to change the name of the club to one which would not violate School Board policy and which would not likely result in further disruption in the schools.  Plaintiffs claim that the School Board's denial of their application is a violation of the Equal Access Act, 20 U.S.C. § 4071, 42 U.S.C. § 1983, and their First Amendment rights.  SBNC denies these allegations.

## STATEMENT OF FACTS

On November 18, 2008, the School Board of Nassau County approved amendments to its administrative rule 5.86 relating to "School Clubs, Organizations, and Social Functions."  *See* amended Administrative Rule 5.86 attached as Exhibit A and Affidavit of Dr. Ruis dated March 3, 2009 ("Ruis Aff., ¶ 3") filed contemporaneously herewith.  Under this rule, "[a]ny club or organization in the school must secure the approval of the school principal and comply with guidelines prescribed by the Superintendent."[1]  The amended rule permits the School Board an opportunity to assess all school clubs and organizations and to prescribe guidelines for the schools to implement the rule.  (Ruis Aff., ¶ 4).  As of November 26, 2008, a moratorium was placed on all clubs and organizations until each had been properly reviewed and considered as per Rule 5.86.  (Ruis Aff., ¶ 5).  After dissemination of the implementation guidelines per Rule 5.86, the petition for recognition of the Yulee High School Gay-Straight Alliance was reviewed, as was each proposed school club or organization.  (Ruis Aff., ¶ 6).

After review of the GSA's petition, the School Board indicated to Plaintiffs that the club would be granted full access to the campus and its facilities on the condition that the

---

[1] John L. Ruis, Ed.D. is the Superintendent of the Nassau County School Board and has served in that position for over sixteen (16) years.

name of the club be changed to reflect the purported purpose of the club, i.e., preventing bullying and discrimination, providing a safe environment, and encouraging tolerance, acceptance and equality in the school community.   (Ruis Aff., ¶ 7).   Moreover, the Superintendent had tangible concerns regarding the safety and well-being of the students based on his experience during the 2007-2008 school year on the Yulee Middle School campus which resulted in disruption involving Plaintiff Page.   Plaintiff Page sought permission from her principal for her and others to wear duct tape over their mouths in observation of the Day of Silence.[2]   They were granted permission to do so as long as it did not cause a disruption.   On the Day of Silence, some students wore duct tape, while other students wore t-shirts with an anti-gay slogan.   Concerned over rising tension between the students, the principal instructed all the students to remove the duct tape **and** the t-shirts. While in the cafeteria for the Career Fair which was taking place on the same day, Plaintiff Page became very upset when her girlfriend was once again asked to remove the duct tape from her mouth.   Plaintiff Page began yelling and cursing and being disruptive to the Career Fair and to the other students.   She was escorted to the guidance counselor's office where she continued to curse in a loud and disruptive manner.   The principal stepped in and took her aside in an attempt to diffuse the situation.   Plaintiff Page's unacceptable behavior continued. In fact, Plaintiff's disruptive behavior escalated and a chain of events ensued which ultimately resulted in Plaintiff being suspended and completing the remainder of her eighth grade year at a different school.   (Ruis Aff., ¶ 13).

---

[2] The Day of Silence is a protest of harassment against gays, lesbians, bisexuals and transgenders where the students take a vow of silence for the day.

Being mindful of this prior incident, it was communicated to Plaintiffs and their attorney that a club name highlighting specific sexual orientations (whether homosexuality or heterosexuality or any other) would violate school board policy and an alternative name would, therefore, be necessary.  (Ruis Aff., ¶ 8).  Plaintiffs' counsel has refused other names outright such as Tolerance Club, without discussion.[3]  For example, Plaintiffs would be allowed to use an alternative name such as "Circle of Equality," a name used by Plaintiff Page herself on the Yulee Middle School campus as it accurately reflects the purpose of the club indicated in the club's constitution.  (Ruis Aff., ¶ 9).  Plaintiffs indicated that the name of the club must communicate the "gay specific" purpose of the organization and that the school board could not "de-gay" a student club.  (Ruis Aff., ¶ 10).  The School Board indicated that should Plaintiffs wish to reconsider the School Board's offer, it would review the required paperwork once submitted, as is done with every club and organization on campus.  (Ruis Aff., ¶ 11).  If the paperwork were in compliance with SBNC policy, Plaintiffs would be allowed equal access to the campus for their club and would be provided with a faculty advisor.  (Ruis Aff., ¶ 15).  Plaintiffs instead chose to file the instant lawsuit.

## ARGUMENT

### I.      The Standards for Granting a Preliminary Injunction

A preliminary injunction is an extraordinary and drastic remedy and is the exception rather than the rule.  *Siegel v. Lepore,* 234 F.3d 1163 (11th Cir. 2000) citing *McDonald's Corp. v. Robertson,* 147 F.3d 1301 (11th Cir. 1998) and *Texas v. Seatrain Int'l, S.A.,* 518 F.2d 175 (5th Cir. 1975).  A district court may grant injunctive relief only if the moving party

---

[3] This flat refusal is despite the fact that the word "tolerance" appears in the club's very own constitution and is one of its purported purposes.

shows that:  (1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest.  *Id.* at 1176.  In this Circuit, the preliminary injunction is not to be granted unless the movant clearly establishes the burden of persuasion on all four prerequisites.  *Id.* citing *McDonald's Corp.,* 147 F.3d at 1306.  As indicated below, Plaintiffs fail to meet any of the four prerequisites and their motion for preliminary injunction must be denied.

II.   **Plaintiffs' Cannot Establish a Substantial Likelihood of Success on the Merits Under the First Amendment or the Equal Access Act**

A.   **Plaintiffs' First Amendment Claim Must Fail**

Plaintiffs correctly assert that public school students "do not shed their constitutional rights to freedom of speech or expression at the schoolhouse gate."  *Tinker v. Des Moines Indep. Cmty. Sch. Dist.,* 393 U.S. 503, 506 (1969).  Plaintiffs argue their First Amendment rights have been violated due to viewpoint discrimination by the SBNC when it denied the Gay-Straight Alliance access to the campuses of Yulee Middle School and Yulee High School ("YHS").[4]  However, Plaintiffs' argument is flawed and Plaintiffs' misapply case law upon which they rely.

When the State establishes a limited public forum, the state is not required to and does not allow persons to engage in every type of speech.  *Caudillo v. Lubbock Indep. School*

---

[4] Although Plaintiffs' Complaint seeks nominal damages for an alleged violation of Plaintiff Page's rights related to an alleged denial of access to the GSA at Yulee Middle School, Plaintiffs' Motion for Preliminary Injunction seeks relief as to Yulee High School only and Defendant's arguments will be directed accordingly. However, Defendant's arguments apply with equal force and effect regarding allegations surrounding Yulee Middle School and are adopted by reference herein.

*Dist.,* 311 F.Supp.2d 550 (N.D. Texas 2004) *citing Good News Club v. Milford Cent. Sch.,* 533 U.S. 98, 106, 121 S.Ct. 2093, 150 L.Ed.2d 151 (2001).  Limited public forums allow a school to limit the subject-matter topics that will be discussed, but not the individual viewpoints on the allowed subject matter.  *Id. citing Perry Educ. Ass'n v. Pertty Local Educators' Ass'n,* 460 U.S. 37, 45-49, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983).  The State may be justified "in reserving [its forum] for certain groups or for the discussion of certain topics" and it has the right to limit subject matter to those subjects proper for which the forum was reserved.  *Id. citing Rosenberger v. Rector & Visitors of Univ. of Va.,* 515 U.S. 819, 829-30, 115 S.Ct. 2510, 132 L.Ed.2d 700 (1995).  However, a school may not limit viewpoints on particular subjects that it has allowed in a limited public forum.  *Id. citing Cornelius v. NAACP Legal Defense & Educ. Fund, Inc.,* 473 U.S. 788, 800, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985).

Plaintiffs claim that the SBNC's action in denying GSA access to the campus is an impermissible viewpoint exclusion.  In order to be actionable as a viewpoint exclusion, the viewpoint excluded must itself be germane to the permissible subject matter of the forum.  *Id. citing Cornelius,* 473 U.S. at 806, 105 S.Ct. 3439.  In this case, no clubs highlighting sexual orientation have been permitted in any school in Nassau County, including YHS.  (Ruis Aff., ¶ 12).  Restrictions to the subject matter are allowed if reasonable in light of the purpose served by the forum and as long as the restrictions are "not an effort to suppress expression merely because officials oppose the speaker's view."  *Id.* at 561.  *See Arkansas Educ. Television Comm'n,* 523 U.S. at 678, 118 S.Ct. 1633.  The SBNC would have denied any group access to school facilities if such a group had chosen to violate SBNC's policy by

6

highlighting sexual orientation and sexuality.  The distinction of whether the name is homosexual or heterosexual in nature is irrelevant.

Plaintiffs' direct this Court's attention to the Eleventh Circuit's decision in *Gay Lesbian Bisexual Alliance v. Pryor,* 110 F.3d 1543 (11th Cir. 1997), to show they have been unconstitutionally subjected to viewpoint discrimination.  However, this case can be distinguished as no viewpoint discrimination has occurred here.[5]  In *Gay Lesbian Sexual Alliance,* the university student organization representing interests of gay, lesbian and bisexual students brought a § 1983 claim against the Alabama Attorney General, seeking declaratory and injunctive relief, alleging that a statute prohibiting any college or university from spending public funds to sanction, recognize or support any group that promotes lifestyle or conduct prohibited by sodomy and sexual misconduct laws violated the First Amendment.  The trial court held the statute unconstitutional and the Attorney General appealed.  The Eleventh Circuit held that application of the statute to the group was blatant viewpoint discrimination as it discriminated against one particular viewpoint because funding of groups which foster or promote compliance with the sodomy of sexual misconduct laws

---

[5] The case can further be distinguished on the basis that it involves university level students as compared with the instant matter which concerns students in grades 6 through 12 which includes students as young as 11 or 12 years of age.  In *Bethel School District v. Fraser,* the Supreme Court recognized the sensitivity of minors to sexuality and sexual topics and the role of public schools when it ruled that it was reasonable and permissible for a school to punish a student for giving a nominating speech containing sexual metaphors at a school assembly.  *Bethel School District v. Fraser,* 478 U.S. 675, 106 S.Ct. 3159, 92 L.Ed.2d 549 (1986).  *See also, Trachtman v. Anker,* 563 F.2d 512 (2d Cir. 1977) (The school prohibited students from conducting a survey on sexuality among the high school student body because it feared the survey would cause emotional harm to the students since they were just beginning to grapple with issues of sexuality.  The court recognized that the school's action was 'principally a measure to protect the students committed to their care,' and even though the school could not predict with certainty how many students from each grade might be harmed, the court deferred to the school authorities' experience and knowledge, and the community's trust vested in them, to reasonably foresee harm to the students.)

was permissible.   *Gay Lesbian Sexual Alliance,* 110 F.3d at 1549.   This case is distinguishable from the conduct of SBNC and Plaintiffs' reliance is misplaced.

SBNC does not permit clubs of <u>any</u> nature which highlight or promote sexual orientation.   Unlike the situation in *Gay Lesbian Sexual Alliance,* supra, SBNC has not created a limited open forum for the discussion of sexual orientation, but banned the use of the name "Gay-Straight Alliance."   The SBNC would not permit a club with a name that highlighted sexual orientation period, whether it is homosexual, heterosexual, or otherwise. As such, there is no viewpoint discrimination by the SBNC against the Gay-Straight Alliance because it has not permitted any clubs of this nature at any point in time and does not plan to. (Ruis Aff., ¶ 12).   The SBNC is not discriminating against the Gay-Straight Alliance; it does not permit any clubs whose name highlights sexual orientation because that is a violation of School Board policy, particularly in light of Florida law which requires the school to teach and promote abstinence.   Florida Statutes, § 1003.46 (2)(a).   *See also,* Florida Statutes, §§ 1003.42 and 1003.43.

This Court needs look no further than Webster's Dictionary to find the basis of the School Board's objection to the name.   Plaintiffs insist on using the name "Gay-Straight Alliance."   Webster's Dictionary defines "gay," in this context as:

> 4a:  homosexual <gay men>
>
>  b:  of, relating to, or used by homosexuals <the *gay* rights movement> <a *gay* bar>

Homosexual is defined by Webster's as:

> 1:  of, relating to, or characterized by a tendency to direct sexual desire toward another of the same sex

> 2:   of, relating to, or involving sexual intercourse between persons of the same sex.

*See* Merriam-Webster Dictionary OnLine.   By virtue of the very name of the club, it highlights the issue of sexual orientation and sexual practices which is inconsistent with the nature of clubs permitted on the Yulee High School campus such as the Chess Club, National Honors Society, SWAT (Students Working Against Tobacco) and Yearbook.   It is also inconsistent with School Board policy and Florida Statutes.   Contrary to what occurred in the *Gay Lesbian Sexual Alliance* case, the SBNC has not allowed, for example, a club which highlights heterosexual orientation, but is now banning a club which highlights homosexual orientation.   By way of example, the Eleventh Circuit in the *Gay Lesbian Sexual Alliance* case explained that "a university might limit the funds it makes available for student activities to those involving Shakespearean literature.   Within such a framework, however, the university could not deny funding to critical interpretations of Shakespeare."   *Gay Lesbian Sexual Alliance,* 110 F.3d at 1549.   Similarly, the SBNC has not permitted a "limited open forum" to be created regarding sexual orientation and, thus, is not discriminating against the Gay-Straight Alliance.   There is no limited open forum regarding any sexual orientation that will be permitted at all.

The SBNC has not told the Plaintiffs they cannot meet because of the alleged purpose of the club, that being to prevent bullying and harassment of students of various sexual orientations, providing a safe environment, and encouraging tolerance and acceptance.   The Plaintiffs were told that the name of the club was contrary to School Board policy as it highlighted sexual orientation and, if Plaintiffs agreed to change the name of the club to

accurately reflect the purpose of the club, the application of the club would be reconsidered.[6]
*See* Letter from John L. Ruis, Ed.D. to Robert R. Rosenwald, Esq. dated January 27, 2009
attached as Exhibit B. The basis of the School Board's denial was the highlighting of sexual
orientation, regardless of what that orientation might be. As a result, there is no First
Amendment violation because the SBNC did not engage in viewpoint discrimination.

The Supreme Court of the United States has said that "once [a university] has opened
a limited forum, the State must respect the lawful boundaries it has itself set. The state may
not exclude speech where its distinction is not reasonable in light of the purpose served by
the forum, nor may it discriminate against speech on the basis of its viewpoint."
*Rosenberger v. Rector & Visitors of the Univ. of Virginia,* 515 U.S. 819, 115 S.Ct. 2510, 132
L.Ed.2d 700 (1995). However, the Court went on to explain that a university may determine
what subjects are appropriate for the forum, but the university may not proscribe positions
students choose to take on those subjects. The Supreme Court discussed this important
distinction in *Rosenberger* and made clear that content discrimination is permissible "if it
preserves the purposes of the limited forum." *Gay Lesbian Bisexual Alliance v. Pryor,* 110
F.3d 1543, 1549 (11th Cir. 1997) citing *Rosenberg* 515 U.S. at 829.

The purported goals of Plaintiffs and their club including providing a safe
environment, building awareness, reducing violence and promoting tolerance may well be
aligned with the mission and values of the Nassau County School District which include
ideals such as all people have intrinsic worth and effective relationships are developed and

---

[6] In fact, in a meeting with the Plaintiffs' attorney, the School Board informed Plaintiffs' counsel that the
School Board was willing to let the proposed GSA meet on the condition that the name of the club was changed
to reflect the purpose of preventing bullying and discrimination. Plaintiffs refused this offer.

maintained through mutual respect, trust, and communication.  *See* statement of Nassau County School District Mission and Values attached as Exhibit C.

Plaintiff Page herself has utilized a name which encompasses both the interests of her club and the school district.  While in middle school, Plaintiff Hannah Page organized the "Circle of Equality," an activity to symbolize the unity of all people, where students sat together in a circle during noninstructional time to memorialize the bullying and harassment that gay, lesbian, bisexual and transgender students suffer in school.  *See* paragraph 17, Declaration of Hannah Page dated February 5, 2009 attached to Plaintiffs' Motion as Exhibit A.  This is identical to one of the purposes of the Gay-Straight Alliance as stated in its purported constitution.  *See* page 4, Plaintiffs' Motion for Preliminary Injunction.  Plaintiffs argue that the name "Gay-Straight Alliance" is of considerable importance to the members of the GSA because it communicates the mission of the organization and makes public the reason for its existence.  *See* Plaintiffs' Motion for Preliminary Injunction and paragraph 38, Declarations of Hannah Page and Jacob Brock attached to Plaintiffs' Motion as Exhibits A and B respectively.  However, this statement is at odds with the clubs very own constitution which says it stands for all students who are "gay, lesbian, bisexual and transgender."  But, the name "Circle of Equality" or something similar is much more all encompassing and may include not only gays, lesbians, bisexuals and transgenders, but all students of any nationality, minority, religious affiliation or anyone who might confront bullying and ignorance.  If the club truly intends to promote tolerance, acceptance and education, and promote the peaceful co-existence of students despite their differences, a name that is consistent with the purported constitution of the club and the School's mission and values is

more appropriate.  If Plaintiffs are fighting for the right to equal access for their club on campus because its goals are necessary and important, it seems disingenuous of Plaintiffs to refuse to compromise on a club name that actually better comports with its mission.

Students enjoy some constitutional rights to freedom of speech and expression within the confines of the schoolhouse, *Tinker v. Des Moines Indep. Comty, Sch. Dist.,* 393 U.S. 503, 89 S.Ct. 733, 736, 21 L.Ed.2d 731 (1969); but those constitutional rights are circumscribed by "the special characteristics of the school environment." *Id.*  The need and obligation of the State and school officials to prescribe and control conduct in schools is well-recognized, *see id.;* [a] school need not tolerate student speech that is inconsistent with its 'basic educational mission.'" *Hazelwood Sch. Dist. v. Kuhlmeier,* 484 U.S. 260, 108 S.Ct. 562, 567, 98 L.Ed.2d 592 (1988), *quoting Bethel Sch. Dist. No. 403 v. Fraser,* 478 U.S. 675, 106 S.Ct. 3159, 3165, 92 L.Ed.2d 549 (1986). The school board has the inherent right to name clubs and to set appropriate conditions for meeting on school board property.

The voters of Nassau County elected the officials they felt most qualified to implement and enforce the policies of the school district.  The Superintendent and the School Board are vested with the authority to conduct the schools of Nassau County, including Yulee High School, in the best interest of the children in Nassau County.  What might be most appropriate and in the best interest of the children in high school in other parts of the country may not be the same for the students at Yulee High School.  As a result, have the **Defendants** shown a substantial likelihood of success on the merits?  Yes.  However, it is **Plaintiffs** that must prove a substantial likelihood of success on the merits of their First

Amendment claim before this extraordinary remedy of preliminary injunction is granted and they are unable to do so.

**B.**     **Plaintiffs' Claim Under the Equal Access Act Also Fails**

A similar analysis defeats Plaintiffs' claim under the Equal Access Act ("EAA") as well.  The EAA, passed by Congress in 1984 to combat discrimination against student religious groups in public secondary schools, provides:

> It shall be unlawful for any public secondary school which receives Federal financial assistance and which has a limited open forum to deny equal access or a fair opportunity to, or discriminate against, any students who wish to conduct a meeting within that limited open forum on the basis of the religious, political, philosophical, or other content of the speech at such meetings.

20 U.S.C. § 4071 (a).  As indicated above, in order for Plaintiffs to be entitled to a preliminary injunction, they must show a substantial likelihood of success that they will be able to prove at trial that the SBNC violated the EAA.  Accordingly, Plaintiffs have the burden of demonstrating that the SBNC: 1) is a public secondary school that receives federal assistance; 2) has a "limited open forum;" and 3) has discriminated against students wishing to conduct a meeting within that open forum.

Although Plaintiffs have offered no proof that SBNC is a public school that receives federal funds in their motion for preliminary injunction, Defendant will not dispute that issue for purposes of Plaintiffs' motion only.  Further, for purposes of Plaintiffs' motion only, Defendant will further agree that Yulee High School has opened a "limited open forum" as the school permits noncurricular clubs to meet during noninstructional time on school property.  However, Plaintiffs are unable to meet the third prong listed above, that the school

has discriminated against Plaintiffs who wish to establish a student-initiated, sex-based club at YHS.

In order to permit public schools to retain the necessary control of their school environment and curriculum, Congress provided schools with safe harbor exceptions to the EAA under which a school may legitimately deny the formation of a student-initiated club even when the school has allowed a limited open forum.  The EAA identifies some safe harbor exceptions when it states that the Act shall not be "construed to limit the authority of the school, its agents or employees, to maintain order and discipline on school premises, to protect the well-being of students and faculty, and to assure that attendance at meetings is voluntary."  20 U.S.C. § 4071(f).  As the Supreme Court of the United States stated in *Tinker v. Des Moines Indep. Comty. School Dist.,* the Act expressly does not limit a school's authority to prohibit meetings that would "materially and substantially interfere with the orderly conduct of educational activities within the school."  *Tinker v. Des Moines Indep. Comty. School Dist.,* 393 U.S. at 509.  The limited open forum created by the EAA does not require Nassau County schools to permit student-initiated clubs to be established where the name of the club highlights sexual orientation and sexuality.

Superintendent Ruis and the SBNC may restrict sex-based clubs, whether based on heterosexual, homosexual, bisexual, or any other sexual identities, from the school's limited open forum because a student club which highlights sexual orientation and sexuality around young students who are struggling with and developing their own sexual identities would materially and substantially interfere with the orderly conduct of the school, is inconsistent with the abstinence-based curriculum and would not protect student well-being.  (Ruis Aff.,

14

¶¶ 12-14).  Defendant SBNC is within the terms of the safe harbor exceptions to the EAA when it limits the subjects upon which EAA clubs may be based to those purposes for which the forum was created.

In this regard, the Superintendent had genuine concerns regarding potential disruption and safety issues involving the students, including Plaintiffs.  School officials may deny access to a limited public forum to a non-curricular student group where it can show that the forbidden conduct would materially and substantially disrupt the operation of the school or materially and substantially harm the well-being, or otherwise invade the rights, of others. *Tinker,* 393 U.S. at 509.  During the 2007-2008 school year on the Yulee Middle School campus, students who desired to do so were permitted to wear duct tape over their mouths in observance of a Day of Silence (held by students to bring attention to anti-lesbian, gay, bisexual and transgender harassment).  On that day, some students also wore anti-gay t-shirts. Because the principal of the school was concerned about increasing tensions between the two groups, he required the duct tape and the t-shirts be removed.  Plaintiff Page became so upset by this and the inability of her girlfriend to wear the duct tape that a serious disruption ensued, she was taken to the guidance counselor's office where she continued to create a disruption and use expletives.  The principal stepped in to try to diffuse the situation. Plaintiff Page's disruptive behavior escalated and became increasingly violent.  She was ultimately suspended and completed the remainder of her eighth grade year at a different school.  (Ruis Aff., ¶ 13).

Thus, the Superintendent and School Board officials had legitimate concerns regarding the safety and well-being of the students, including Plaintiffs, based on past

experience of disruption and safety involving an occasion of students highlighting their sexual orientation.  As a result, the School Board is able to make a "specific showing" of disruption and risk based on actual "evidence" as described by the Supreme Court in *Tinker. Id.* at 508, 509.  What position would the School Board be in if it did not consider this incident, involving Plaintiff no less, when making its decision?

Moreover, Defendant has made it clear to Plaintiffs that the purported goals of the club are not objectionable, it is simply the name.  Because the SBNC would not have permitted any clubs with names which highlight sexual orientation or sexuality of any kind to be organized by students at Yulee High School, prohibition of Plaintiffs' club on this basis was not discriminatory.  Prohibiting a club name highlighting sexual orientation and sexuality within a limited open forum does not discriminate based on viewpoint and is, therefore, a permissible content limitation.  As a result, Plaintiffs cannot show a substantial likelihood for success on the merits and the Motion for Preliminary Injunction must be denied.

III.   **Plaintiffs Have Failed to Show a Substantial Threat of Irreparable Injury if Plaintiffs' Club Uses a Different Name**

Plaintiffs argue to this Court that the objectives of the GSA are:

(a) To provide a social, emotional and educational safe environment for students who are gay, lesbian, bisexual, transgender, and their straight allies.

(b) To build awareness in the school community of issues concerning and affecting the lives of students who are lesbian, gay, bisexual, transgender, and their straight allies.

(c) To reduce violence, harassment, bullying and discrimination based on sexual orientation and/or gender identity.

16

(d) To encourage tolerance, acceptance and equality within the school community regardless of sexual orientation or gender identity.

(e) To promote pride in our community.

*See* page 4, Plaintiffs' Motion.  They argue that sexual orientation and sexuality is not the focus of the club.  If that is correct and their intentions are true, there can be no irreparable harm to the Plaintiffs by being allowed equal access to the campus, under an alternative name such as "Circle of Equality" which was espoused by Plaintiff Page.  The rights of the Plaintiffs will not be violated and the authority and responsibility of the SBNC to protect the well-being of the students placed in its care will be unfettered.  If Plaintiffs proceed in this manner, there will be no irreparable injury to Plaintiffs.

**IV.**   **The Threatened Injury to the Movant Does Not Outweigh Whatever Damage the Proposed Injunction May Cause the Opposing Party**

For the reasons indicated above, the potential damage to the students of Yulee High School and the SBNC if it is not permitted to maintain and protect the well-being of the students during the pendency of this case far outweighs any threatened injury to the Plaintiffs.  The Plaintiffs have the ability to have a forum to promote the objectives of their club on the campus of YHS, which they refuse.  The SBNC is willing to reconsider granting access to the club if a name can be agreed upon, such as "Tolerance Club" or "Circle of Equality," which was used by Plaintiff Page on the Yulee Middle School campus.

On the other hand, the authority and judgment of the SBNC may be irreparably undermined and damaged if it is not permitted to conduct the affairs of the school in the manner it deems most appropriate to protect the well-being of its students and prevent further disruption on the campuses.  The SBNC must be allowed to determine clubs that may or may

17

not be appropriate on campus.  The SBNC must be allowed to maintain control and minimize disruption in its schools.  Otherwise, the important purpose for which the SBNC was created, the education of school age students, will be impaired.  In this case, the SBNC has indicated a willingness to permit the club to meet with the proviso that the name of the club not violate school board policy or instigate disruption.  However, the SBNC will not permit any club whose name highlights sexual orientation and sexuality, including the Gay-Straight Alliance or any other, regardless of what sexual orientation may be at issue.

**V.      The Public Interest Favors Keeping the Authority to Educate and Protect the Students of Yulee High School with the SBNC**

Neither the EAA or public interest supports taking authority away from the schools as they work hard to educate and protect the well-being of the students, and the case law does not require it.  The EAA was passed primarily in response to a handful of cases in which courts found that after-school Bible clubs were prohibited from meeting in public schools because of their religious nature.  *Board of Educ. of the Westside Community Schools v. Mergens,* 496 U.S. 226, 110 S.Ct. 2356, 110 L.Ed.2d 191 (1990).  However, at the time, both supporting and opposing members of Congress worried that this grant of protection for student speech was too broad and the intrusion on school autonomy too great which might harm students or undermine the school's mission.  *Hsu v. Roslyn Union Free School District,* 85 F.3d 839 (2nd Cir. 1996).  Senator Hatfield, the primary Senate sponsor for the Act, countered that concern by pointing out that the Act contained exceptions that still allowed schools to outlaw groups that would be disruptive to the school.  He admitted that "we are [not] going to be able to anticipate every possible instance that will arise under this expansion of rights." *Id.* at 855 *quoting* 130 Cong. Rec. 19,255 (1984).  The objective of the

EAA was to address concerns regarding religious discrimination versus violations of the Establishment Clause.  The EAA was never intended to stand for the proposition that any and all groups must be permitted on a secondary school campus and the schools themselves have no authority to regulate this issue.  Judges have also questioned the application of the EAA in such a way that takes authority away from the schools as they attempt to protect the well-being of their students.  Justice Stevens, in his dissent in the *Mergens* decision, voiced this concern when he stated:

> As a matter of pedagogy, delicate decisions about immersing young students in ideological cross-currents ought to be made by educators familiar with the experience and needs of the particular children affected and with the culture of the community in which they are likely to live as adults.  *See Hazelwood School Dist. v. Kuhlmeier,* 484 U.S., at 271-272, 108 S.Ct. at 570.  As a matter of politics, public schools are often dependent for financial support upon local communities.  The schools may be better able to retain local favor if they are free to shape their policies in response to local preferences.  *See San Antonio Independent School Dist. v. Rodriguez,* 411, U.S. 1, 49-53, 93 S.Ct. 1278, 1305-07, 36 L.Ed.2d 16 (1973).  As a matter of ethics, it is sensible to respect the desire of parents to guide the education of their children without surrendering control to distant politicians.  *See Meyer v. Nebraska,* 262 U.S. 390, 399-403, 43 S.Ct. 625, 626-28, 67 L.Ed. 1042 (1923).

*Mergens* at 291, n. 26 (Justice Stevens, dissenting).  The inculcation of values is truly the work of the school, and the determination of what manner of speech is inappropriate properly rests with the school board.  *Caudillo,* 311 F.Supp. 2d at 562 *citing Bethel Sch. Dist. No. 403 v. Fraser,* 478 U.S. 675, 676, 106 S.Ct. 3159, 92 L.Ed.2d 549 (1986).  Indeed, the constitutional rights of students in public school are not automatically coextensive with the rights of adults in other settings.  *Id. citing New Jersey v. T.L.O.,* 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985).  Justice Stevens went on to say:

> I believe we must probe more deeply to avoid a patently bizarre result.  Can Congress really have intended to issue an order to every public school in the

> Nation stating, in substance, that if you sponsor [clubs] without having formal classes in those subjects-you must also open your doors to every religious, political, or social organization, no matter how controversial or distasteful its views might be?  I think not.  A fair review of the legislative history of the [EAA] discloses that Congress intended to recognize a much narrower forum. . .

*Mergens* at 271 (Justice Stevens, dissenting).  Academic concerns are but one part of the issues confronting schools today.  On a daily basis, schools must also deal with teen pregnancy, drugs, violence, broken families, and drop-out rates.  Many of these issues the schools have no control over, but they do have control over the campus environment they provide to promote the well-being and education of their students as long as they do so within legal confines, which the SBNC has done in this case.

WHEREFORE, Defendant, School Board of Nassau County respectfully requests this Court deny Plaintiffs' Motion for Preliminary Injunction.

Respectfully submitted,

s/ Sharon K. Duncan
FRANCIS H. SHEPPARD, ESQUIRE
Florida Bar No. 0442290
SHARON K. DUNCAN, ESQUIRE
Florida Bar No. 0959774
RUMBERGER, KIRK & CALDWELL
300 South Orange Avenue, Suite 1400
Post Office Box 1873
Orlando, Florida  32802-1873
Telephone:  (407) 872-7300
Telecopier:  (407) 841-2133
Email:  FSheppard@rumberger.com
Email:  SDuncan@rumberger.com

Attorneys for Defendant

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March 3, 2009, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:  Robert F. Rosenwald, Jr., Esquire, rrosenwald@aclufl.org, Randall C. Marshall, Esquire, rmarshall@aclufl.org, Maria Kayanan, Esquire, mkayanan@aclufl.org and Shelbi D. Day, Esquire, sday@aclufl.org.

<div align="right">

s/ Sharon K. Duncan_____
FRANCIS H. SHEPPARD, ESQUIRE
Florida Bar No. 0442290
SHARON K. DUNCAN, ESQUIRE
Florida Bar No. 0959774
RUMBERGER, KIRK & CALDWELL
A Professional Association
Lincoln Plaza, Suite 1400
300 South Orange Avenue
Post Office Box 1873
Orlando, Florida  32802-1873
Telephone:  (407) 872-7300
Telecopier:  (407) 841-2133
Email:  FSheppard@rumberger.com
Email:  SDuncan@rumberger.com

Attorneys for Defendant

</div>