UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

**GAY-STRAIGHT ALLIANCE OF YULEE
HIGH SCHOOL**, et al,

    Plaintiffs,

vs.                             CASE NO.: **3:09-cv-112-J-25TEM**

**SCHOOL BOARD OF NASSAU COUNTY**,

    Defendant.
_____/

## ORDER and PRELIMINARY INJUNCTION

This Cause is before the Court on Gay-Straight Alliance of Yulee High School (Alliance), Hannah Page and Jacob Brock's Motion for Preliminary Injunction (Dkt. 2) and Motion to Waive Bond (Dkt. 6). Defendant School Board of Nassau County (School Board or Board) has filed oppositions to the Motions. The Court held a motion hearing on March 5, 2009.

Also before the Court is Defendant's Motion to Strike (Dkt. 16). Defendant seeks to exclude Plaintiffs' submission of the Fellowship of Christian Athletes' "Play Book." Defendant maintains the evidence should be excluded because it was not submitted five days prior to the hearing as required, Plaintiffs failed to provide a copy until the day *after* the motion hearing and the evidence was not properly authenticated. As to the first point, the Court allowed Defendant to

1

respond to the evidence when it granted supplemental briefing. As to the last point, while Defendant's arguments are well taken, it failed to make any argument regarding the authentication issue during the hearing.

Regardless, the Court need not rule on the Motion to Strike because reference to the Christian athlete organization is not necessary to render its decision on the preliminary injunction motion. Thus, the Motion to Strike is denied as moot.

**Standard**

To obtain a preliminary injunction, Plaintiffs must establish each of the following: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) that the threatened injury to the plaintiffs outweighs the harm an injunction may cause the defendant; and (4) that granting the injunction would not disserve the public interest. *Teper v. Miller*, 82 F.3d 989, 992 n.3 (11th Cir. 1996) (citation omitted).[1]

The Equal Access Act (EAA) provides as follows:

It shall be unlawful for any public secondary school which receives Federal financial assistance and which has a limited open forum to deny equal access or a fair opportunity to, or discriminate against, any students who wish to conduct a meeting within that limited open

---

[1] Most internal citations are omitted in this Order.

forum on the basis of the religious, political, philosophical, or other content of the speech at such meetings.

20 U.S.C. § 4071(a).

The EAA does not "limit the authority of the school, its agents or employees, to maintain order and discipline on school premises, to protect the well-being of students and faculty, and to assure that attendance of students at meetings is voluntary." 20 U.S.C.A. § 4071(f).

Courts examine whether the proposed club would: (1) materially and substantially disrupt the operation of the school, or (2) materially and substantially harm the well-being, or otherwise invade the rights, of others. *Tinker v. Des Moines Independent Community School Dist.*, 393 U.S. 503, 513-14 (1969).

## Background and Pleading Summary

Plaintiffs Hannah Page and Jacob Brock are students at Yulee High School (Yulee High or school). The students sought permission to form an organization focusing on combating antigay harassment and discrimination and educating the school community about these issues.[2]

---

[2]There are thousands of secondary school Alliances nationwide. The purposes of the the Alliance, as stated in its constitution, are:
    (a) To provide a social, emotional and educational safe environment for students who are gay, lesbian, bisexual, transgender, and their straight allies.
    (b) To build awareness in the school community of issues concerning and affecting the lives of students who are lesbian, gay, bisexual, transgender, and

3

The Board ultimately denied recognition to the Alliance based upon its choice of the name "Gay-Straight Alliance." Plaintiffs maintain the denial violated the First Amendment and the EAA.

Plaintiffs request the Court enter a preliminary injunction pursuant to Fed. R. Civ. P. 65(a) and Local Rule 4.06 enjoining Defendant from denying equal access, treatment and club recognition to the Alliance.

Defendant argues, *inter alia*, that the EAA does not apply because: (1) an incident at the middle school involving one of the Plaintiffs demonstrates the Alliance may be disruptive and therefore the material and substantial disruption exception applies; (2) there is no limited open forum at Yulee High regarding sexual orientation discussion; and (3) the group's message violates Florida's abstinence only policy. [3]

## Analysis

As a threshold matter, although this Order references First Amendment case law, it does not conduct a separate First Amendment analysis; in enacting

---

their straight allies.
    (c) To reduce violence, harassment, bullying and discrimination based on sexual orientation and/or gender identity.
    (d) To encourage tolerance, acceptance and equality within the school community regardless of sexual orientation or gender identity.
    (e) To promote pride in our community.

[3] Although not entirely clear, it appears that Defendant formally objects only to the name of the club. Regardless, the Court will analyze the club's right to equal treatment *including* its right to use the name Gay-Straight Alliance.

4

the EAA, Congress effectively codified the First Amendment rights of non-curricular student groups.[4]

As noted earlier, Plaintiffs' position is that the school board cannot condition approval of the Alliance on a name change.[5] Plaintiffs cite the recent case of *Gonzalez v. Sch. Bd. of Okeechobee Co.* to support its position. In *Gonzalez*, the court held that the school board was obligated by the EAA to grant equal access and recognition to the Alliance and may not place restrictions on it that were not uniformly applied to *all* noncurricular student groups. *Gonzalez v. Sch. Bd of Okeechobee Co.*, 571 F. Supp.2d 1257 (S.D. Fla. 2008). The court dismissed the school board's argument that its existence would violate its abstinence only policy and also discounted the board's position that the message would interfere with discipline in the operation of the school. *Id.* at 1269.

---

[4] None of the School Board's reasons qualify for any of the "safe harbor" exceptions under the EAA or the First Amendment.

[5] Plaintiffs maintain the name "Gay-Straight Alliance" is important to its mission of fighting homophobia in the school and the community. They note that forcing the club to change its name to the "Tolerance Club" or some other name without the word "gay" communicates a message to the school community and even the members themselves that being gay is shameful and that saying the word "gay" should be avoided.

Plaintiffs also maintain that the name "Gay-Straight Alliance" has taken on special significance; the use of a common name expresses to all the Alliance members across the country that they are not alone.

Plaintiffs have also cited a case directly on point regarding the students' right to use the name "Gay-Straight Alliance." In *Colin v. Orange Unified Sch. Dist.*, the court found the group was not required to change its name to "Tolerance Club," "Acceptance Club" or "Alliance." *Colin v. Orange Unified Sch. Dist.*, 83 F. Supp. 2d 1135, 1147-48 (C.D. Cal. 2000).[6] The Court noted no other proposed club was asked to change its name and that "when passing the EAA, Congress did not pass an Access for All Students Except Gay Students Act." *Id.* at 1142. The court found that a group's speech and association rights are implicated in the name it chooses; the plaintiffs thought it was important to announce that being gay is not "bad," and, further, the students wanted the group to be specific to gay harassment, the core reason for the club's existence. *Id.* at 1147-48.[7]

---

[6] In that case, the students testified that the proposed name change would attack the very core reason for having the club. "[A student testified he] does not even like the word "tolerance" because it is not as affirming as the word "alliance" or "acceptance." To him, "tolerance" means "to put up with" in the sense that "Jews" and "Blacks" used to be "put up with" until they were finally "accepted." ....the Board's suggested name change would indicate a club that is not only more general than the one he wants, but also a club that merely promotes "tolerance," far less than he hopes to achieve." *Id.* at 1147-48.

[7] The Court further noted, "[t]he Board Members may be uncomfortable about students discussing sexual orientation and how all students need to accept each other, whether gay or straight. ... [But] Defendants cannot censor the students' speech to avoid discussions on campus that cause them discomfort or represent an unpopular viewpoint. In order to comply with the Equal Access Act ... the members of the Gay-Straight Alliance must be

6

As noted above, the School Board here also argues that the use of the name Gay-Straight Alliance would materially and substantially disrupt the operation of the school, or materially and substantially harm the well-being, or otherwise invade the rights, of others. Regarding its position that the group would in same way interfere with its abstinence policy, as noted by Plaintiffs, only one court has ever found that a school could permissibly ban a club for this reason and the relevant facts in that case were unique. In *Caudillo v. Lubbock Independent Sch. District*, the court held that the school district could permissibly deny access to a similar club because, *inter alia*, the group's website provided access to obscene, indecent, and lewd sexual material. *Caudillo v. Lubbock Independent Sch. District*, 311 F. Supp.2d 550, 558 (N.D.Tex. 2004).

The court concluded that under those circumstances, the school's abstinence-only policy and the Texas state law which, at the time, criminalized same sex sexual relationships, justified the club's exclusion. *Id.* at 563-68. There are no concerns about an inappropriate website here and there is no evidence that the Alliance counters the relevant abstinence policy in any way. Further, this argument was rejected in *Gonzalez*; the court found that the school

---

permitted access to the school campus in the same way that the District provides access to all clubs, including the Christian Club and the Red Cross/Key Club."

*Colin v. Orange Unified Sch. Dis.*, 83 F. Supp. 2d at 1149.

7

board failed to demonstrate the club's mission of promoting tolerance towards gays is inconsistent with its abstinence only policy. The court reasoned that if dialogue required to discuss gay tolerance does violence to the principle of abstinence, so does any discussion of STDs and teen pregnancy. This Court agrees with the *Gonzalez* Court; the School Board's argument that the Alliance would in some way interfere with the abstinence only policy is not tell taken.

Next, Defendant contends that the group qualifies for the materially and substantially disruptive exclusion because Plaintiff Page engaged in disruptive behavior last year at Yulee Middle School during a gay rights demonstration. However, one incident involving one Alliance member's behavior at a different school regarding a different event does not amount to actual evidence the current high school club *itself*, or recognition of its name, will cause a material disruption. As argued by Plaintiffs, "[t]he school cannot demonstrate any nexus between the [Gay-Straight Alliance] name and the incident last year."

Further, the Court notes that case law does not support Defendant's point. In *Boyd County High School Gay Straight Alliance v. Board of Educ. of Boyd County, KY,* the school district also argued that the Alliance could be banned as disruptive. In that case, students protesting the existence of the gay rights group organized school boycotts, walkouts, and protests outside the school. The school district argued that the upheaval caused by the protesting students justified the exclusion of the group but the court rejected this argument citing the

prohibition against a "heckler's veto."[8] *Boyd County High School Gay Straight Alliance v. Board of Educ. of Boyd County, KY*, 258 F.Supp.2d 667, 688 -691 (E.D. Ky. 2003).

Also of note, Plaintiffs here observe that the Alliance met on October 1, 2008 with the permission of the principal and the name of the group was announced throughout the school for two days before the meeting over the school's public address system without disruption. The Court finds that the "safe harbor" exceptions are inapplicable.[9]

Lastly, Defendant argues that the school does not provide a limited open forum regarding sexual orientation discussion. However, not a single case supports Defendant's position that it can avoid the EAA's dictates by excluding specific open forum subgroups of this type.[10] If this strategy was available, a

---

[8] Of note, it appears that Plaintiff Page's "outburst" was the direct result of the middle school illegally granting a heckler's veto by prematurely ending the gay rights demonstration.

[9] The *Colin* court observed that, contrary to the board's assertions, the club was formed to *avoid* disruptions to education when students are harassed based on sexual orientation.

[10] Defendant simply argues, "[c]ontrary to what occurred in the Gay Lesbian Sexual Alliance case, the SBNC has not allowed, for example, a club which highlights heterosexual orientation, but is now banning a club which highlights homosexual orientation. By way of example, the Eleventh Circuit in the *Gay Lesbian Sexual Alliance* case explained that "a university might limit the funds it makes available for student activities to those involving Shakespearean literature. Within such a framework, however, the university could not deny funding to critical interpretations of Shakespeare." *Gay Lesbian Sexual Alliance*,

9

school board could, for example, refuse to provide a limited open forum for discussions regarding religion, totally defeating the EAA's goal of protecting school based religious groups.

In sum, the Court finds that Defendant's position is not well founded and Plaintiffs have established a substantial likelihood of success on the merits. The Court further finds the other preliminary injunction requirements have been met: (1) there is a substantial threat of irreparable injury if the injunction is not granted; loss of First Amendment freedom constitutes irreparable injury; (2) the threatened injury to the Plaintiffs outweighs the harm an injunction may cause the Defendant; injunctive relief would not compel Defendant to do anything beyond providing accommodation to the club and (3) the public interest weighs in favor of having access to a free flow of constitutionally protected speech.

Because there is little risk of monetary loss to Defendant as a result of the granting of this preliminary injunction, the Court waives the security requirement set forth in Rule 65(c) of the Federal Rules of Civil Procedure. Defendant's argument that allowing the Alliance to meet may cause "harassment and safety problems" and that it is "at risk of incurring the costs and damages associated with litigation arising out of additional harm and injury to the students..." is not

---

110 F.3d at 1549. Similarly, the SBNC has not permitted a "limited open forum" to be created regarding sexual orientation and, thus, is not discriminating against the Gay-Straight Alliance. There is no limited open forum regarding any sexual orientation that will be permitted at all."

well taken. Indeed, a stated goal of the Alliance is to prevent the harassment of gay students. It strains logic to assert that granting recognition to an anti-harassment group will expose Defendant to liability for "additional harm and injury to the students..." Thus, it is **ORDERED**:

1. Plaintiffs' Motion for Preliminary Injunction (Dkt. 2) is **GRANTED**;

    a. Defendant shall, so long as it maintains a limited open forum under the EAA or a limited public forum under the First Amendment, grant official recognition and grant all privileges given other student organizations to the Gay-Straight Alliance of Yulee High School;

    b. Defendant shall not require the Gay-Straight Alliance of Yulee High School to change its name as a condition to official recognition;

    c. Defendant shall not interfere without legally justifiable cause as outlined in this order either with Plaintiffs' ability to advocate for tolerance, respect, and equality of gay, lesbian, bisexual, and transgender people or the other goals set forth in the Gay-Straight Alliance's constitution;

    d. Defendant shall not retaliate against any student or staff member for their involvement in bringing this claim or for their involvement with the Gay-Straight Alliance;

e. Defendant shall distribute this Preliminary Injunction to all of its teachers and staff within **72 hours**.

2. Plaintiffs' Motion to Waive Bond (Dkt. 6) is **GRANTED**; the Court waives the security requirement set forth in Rule 65(c) of the Federal Rules of Civil Procedure.

3. Defendant's Motion to Strike (Dkt. 16) is **DENIED as moot**.

**DONE AND ORDERED** in Chambers this 11th day of March 2009.

HENRY LEE ADAMS, JR.
UNITED STATES DISTRICT JUDGE

cc:
Counsel of Record